IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RENESE BRAMLETT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 20-CV-0537-JFH-CDL |
| | ) |
| SCOTT CROW, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Before the Court is Petitioner Renese Bramlett's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition"). Dkt. No. 1. Bramlett seeks federal habeas relief from the judgment entered against him in the District Court of Tulsa County, Case No. CF-2015-4266, and identifies three claims in the Petition. Bramlett also seeks leave to amend or supplement the Petition to add a fourth claim. For the reasons that follow, the Court, DENIES Bramlett's Motion for Leave to Supplement Writ of Habeas Corpus ("Motion to Supplement") [Dkt. No. 2] and DENIES the Petition.

**BACKGROUND**

In 2016, a Tulsa County jury convicted Bramlett of first-degree murder and recommended a sentence of life without the possibility of parole. Dkt. No. 1 at 1; Dkt. No. 18-5 at 183. The State presented evidence during the guilt phase of the trial establishing that Bramlett strangled to death his ex-girlfriend, Michelle Spence, and that her two sons, who were then fourteen and eleven years old, discovered her body in the backseat of Spence's SUV—naked and covered in a blanket—after they walked to Bramlett's apartment complex and saw Spence's SUV parked across the street from Bramlett's apartment complex. *Bramlett v. State*, 422 P.3d 788, 791 (Okla. Crim.

App. 2018). During the sentencing phase of the trial, the State presented evidence establishing that Bramlett had two prior felony convictions, evidence the jury could consider in determining whether to recommend either a life sentence with the possibility of parole or a life sentence with no possibility of parole. Okla. Stat. tit. 21, § 701.10-1(A). The jury recommended the latter, and the trial court sentenced Bramlett accordingly. Dkt. No. 17-3 at 1; Dkt. No. 21 at 18-2.

Bramlett filed a direct appeal. In 2018, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed Bramlett's conviction but vacated his sentence and remanded for resentencing based on its finding that the prosecutor committed "flagrant misconduct" by misstating the law regarding parole eligibility and, further, that the misconduct "so infected the sentencing stage of Bramlett's trial that it was rendered fundamentally unfair." *Bramlett v. State*, 422 P.3d 788, 799-801 (Okla. Crim. App. 2018). At the conclusion of the resentencing hearing, the jury recommended a sentence of life without the possibility of parole, and the trial court resentenced Bramlett accordingly and entered a new judgment and sentence. Dkt. No. 17-3 at 2.

Bramlett then filed a resentencing appeal asserting three claims. Dkt. No. 17-3 at 2. On October 31, 2019, the OCCA issued a decision rejecting all three claims on the merits and affirming Bramlett's new judgment and sentence. *Id.* at 2, 8. Bramlett did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court. Dkt. No. 1 at 3. Nearly one year later, on October 16, 2020, Bramlett filed, in state district court, a Motion for DNA Testing of Evidence ("DNA Motion") and a Sworn Affidavit of Innocence ("Affidavit"), seeking relief under Oklahoma's Postconviction DNA Act, Okla. Stat. tit. 22, §§ 1373-1373.7. Dkt. No. 17 at 2; Dkt. No. 17-4 at 1-30. The DNA Motion is pending in state district court. Dkt. No. 24 at 5.

Three days after filing the DNA motion, Bramlett filed the Petition, in this Court, seeking

2

federal habeas relief on the same three claims he raised through his resentencing appeal. Dkt. No. 1 at 5, 7-8.[1] In an Order filed December 2, 2020, the Court directed Crow to respond to the allegations in the Petition.[2] Dkt. No. 7. Crow filed a Response in Opposition to the Petition ("Response to Petition") on March 2, 2021. Dkt. No. 17. Bramlett filed a Reply Brief ("Reply") on March 15, 2021. Dkt. No. 20. At that point, the Petition was ripe for adjudication.

Over three months later, on June 29, 2021, Bramlett filed an Application for Postconviction Relief ("APCR") in state district court, seeking relief under Oklahoma's Uniform Post-Conviction Procedure Act, Okla. Stat. tit. 22, §§ 1080-1089. Dkt. No. 21 at 3. In the APCR, Bramlett alleged he was denied his Fourteenth Amendment right to due process because the State of Oklahoma lacked criminal jurisdiction over his prosecution. Dkt. No. 21 at 3. In support of this claim, he cited *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), alleged that his victim was Native American and that the crime for which he was convicted was committed within the boundaries of the Muscogee (Creek) Nation Reservation, and argued that he should have been prosecuted in federal court under the Major Crimes Act, 18 U.S.C. § 1153 (hereafter, "*McGirt* claim").[3] Dkt. No. 21 at

---

[1] Bramlett appears *pro se* in this matter and is entitled to liberal construction of his pleadings but he is not entitled to have this Court act as his advocate by formulating arguments on his behalf. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). Because Bramlett's Petition expressly refers this Court to the appellate brief he filed in the OCCA to support his resentencing appeal, as to all three claims, the Court construes the Petition as raising the same claims and arguments that were presented to and rejected by the OCCA through Bramlett's resentencing appeal.

[2] In the order directing Crow to file a response, the Court dismissed the Petition, in part, to the extent it could be construed as asserting a "fourth ground for habeas relief arising from his pending motion for DNA testing," reasoning that a claim alleging actual innocence is not cognizable on habeas review. Dkt. No. 7 at 2 n.2.

[3] In *McGirt*, the Supreme Court determined that Congress did not disestablish the historical boundaries of the Muscogee (Creek) Nation Reservation, that the reservation thus remains "Indian country" as defined in 18 U.S.C. § 1151(a), and that, as a result, certain crimes committed within the boundaries of that reservation must be prosecuted in federal court. 140 S. Ct. 2462-68, 2479.

3

3-10, 15-17. Bramlett filed the Motion to Supplement on July 29, 2021, seeking leave to amend or supplement the Petition to include the *McGirt* claim.[4] Dkt. No. 21 at 1-2. Crow opposes the Motion to Supplement and urges the Court to deny the Petition. Dkt. Nos. 17, 24.

## DISCUSSION

### I. Motion to Supplement

Federal Rule of Civil Procedure 15 governs Bramlett's request for leave to amend or supplement the Petition. 28 U.S.C. § 2242; *see also Mayle v. Felix*, 545 U.S. 644, 655-65 (2005) (discussing application of Rule 15 in habeas context); *Postelle v. Carpenter*, 901 F.3d 1202, 1225 (10th Cir. 2018) (same). Because Crow filed a response to the Petition and opposes Bramlett's request to add a new claim, Bramlett may not amend or supplement the Petition without leave of Court. Fed. R. Civ. P. 15(a)(2). Under Rule 15(a)(2), a "court should freely give leave" to amend "when justice so requires." A court may, however, deny leave to amend if, among other reasons, the amendment would be futile. *Stafford v. Saffle*, 34 F.3d 1557, 1560 (10th Cir. 1994).

Crow contends, in part, that amendment would be futile because the *McGirt* claim lacks merit. Dkt. No. 24 at 3-7. The Court agrees. Critically, the Supreme Court's recent decision in

---

[4] On April 11, 2022, Bramlett filed a Motion to Stay, asking the Court to stay this habeas proceeding pending the conclusion of Bramlett's efforts to exhaust available state remedies as to the *McGirt* claim. Dkt. No. 31 at 1-3. State prisoners must exhaust available state remedies as to any federal claims before raising those claims in a federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *Ellis v. Raemisch*, 872 F.3d 1064, 1076 (10th Cir. 2017). To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). More recently, Bramlett filed a Motion to Expedite Ruling, advising the Court that he has now exhausted the *McGirt* claim and asking this Court to adjudicate the Petition and, presumably, his pending Motion to Supplement. Dkt. No. 38. Based on representations in the Motion to Expedite Ruling, the Court DENIES as moot the Motion to Stay. Because this Opinion and Order adjudicates the Petition and resolves the Motion to Supplement, the Court also DENIES as moot the Motion to Expedite Ruling.

*Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486 (June 29, 2022), precludes relief on the *McGirt* claim. Bramlett's *McGirt* claim alleges that the State of Oklahoma lacked jurisdiction to prosecute him for murder in Indian Country because his victim was Native American. Dkt. No. 21 at 3-10, 15-17. And Bramlett makes clear that only the victim is Native American. *See* Dkt. 31 at 2 ("Petitioner never claimed to be an Indian, only that victim was an enrolled member of the Cherokee Tribe."). But the Major Crimes Act applies to "Any Indian" who commits murder in Indian Country. 18 U.S.C. § 1153(a). "So even assuming that the text of the Major Crimes Act provides for exclusive federal jurisdiction over major crimes committed by Indians in Indian country," *Castro-Huerta*, 142 S. Ct. at 2496, the Major Crimes Act does not apply to Bramlett. And, to the extent Bramlett asserts that some other federal law barred the State from exercising criminal jurisdiction, he is mistaken because the *Castro-Huerta* Court held that "the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian Country." 142 S. Ct. at 2504-05.

Because Bramlett's *McGirt* claim clearly lacks merit, it would be futile to permit Bramlett to amend or supplement the Petition to add that claim. The Court therefore DENIES Bramlett's Motion to Supplement.

**II.    Petition**

Based on the foregoing, the Court will adjudicate the Petition only as to the three claims raised therein.[5]   Because Bramlett is in custody under a state-court judgment, this Court may not

---

[5]   Bramlett appears to assert additional claims of ineffective assistance of trial and appellate counsel in his Reply to the Petition, filed March 15, 2021. Dkt. 20 at 3-9. But nothing in the record suggests that Bramlett has exhausted, or even attempted to exhaust, available state remedies as to these claims. Further, Bramlett did not mention these claims in his Motion to Supplement or his Motion to Stay. Under these circumstances, there are no ineffective-assistance-of-counsel claims properly before this Court.

grant him federal habeas relief unless he shows that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In other words, a federal court may grant federal habeas relief only if a state violates a petitioner's right that is protected by the Constitution or federal law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Eizember v. Trammell*, 803 F.3d 1129, 1145 (10th Cir. 2015) ("[T]his court's role on collateral review isn't to second-guess state courts about the application of their own laws but to vindicate federal rights."); *but see Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017) (noting that "[a] prisoner may seek relief . . . if a state law decision is so fundamentally unfair that it implicates federal due process").

Further, as relevant here, federal law "prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." *Premo v. Moore*, 562 U.S. 115, 121 (2011); *see also Shinn v. Kayer*, 141 S. Ct. 517, 520 (2020) (stating that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court."). A federal court may not grant habeas relief on federal claims that were rejected on the merits by a state court unless the petitioner first demonstrates that the state court's adjudication of his or her federal claims "resulted in a decision that" either: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding," *id.* § 2254(d)(2). And, in any case, a federal court must presume the correctness of the state court's factual findings unless the petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In short, "[w]hen

a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Kayer*, 141 S. Ct. at 520 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Crow urges the Court to deny the Petition. He contends Bramlett's second and third claims do not assert cognizable habeas claims and, to the extent claims two and three are sufficient to allege violations of federal law, 28 U.S.C. § 2254(d) bars relief as to all three claims in the Petition because the OCCA's decision is neither contrary to nor based on an unreasonable application of clearly established federal law. Dkt. No. 17 at 11-26.

### A.     Prosecutorial Misconduct

Bramlett first claims he was denied his constitutional right to a fair resentencing hearing because the prosecutor's remarks during closing arguments elicited sympathy for the victims of his crime, particularly Spence's sons. Dkt. No. 1 at 5, 69-72. Bramlett argues, as he did in state court, that the prosecutor's following remarks, from the first closing argument, were improper appeals to sympathy:

> You heard the victim's son being asked, Do you like the defendant? No. He never wants to see the defendant. He didn't want to see him this time, but he came to do it for his mother. Two boys, trusting Renese, and he betrayed their trust when he killed their mother.

Dkt. No. 1 at 70. Bramlett further argued that the prosecutor who gave the final closing argument committed misconduct when he:

- "reminded the jury how '[the victim's two sons] at the ripe age of 14 found their mother' dead with fecal matter on her body,"

- "suggested that [the victim] was killed in '[t]he home where she raised her children,'"

- "questioned: 'What does Michelle mean to her family now? It's loss. It's hurt. What does

7

- mom mean for those two boys now because of [Appellant's] decisions?,'" and

- stated, "In Tulsa County, what's it worth when you strangle a woman, move her body for children to find in that state.'"

Dkt. No. 1 at 70. In addition, Bramlett questioned the prosecutor's decision to have Spence's oldest son testify at the resentencing hearing and argued that it is well-settled that "it is improper for a prosecutor to ask jurors to have sympathy for crime victims." *Id.* at 71.

The OCCA rejected Bramlett's prosecutorial-misconduct claim. Initially, the OCCA noted that Bramlett did not object to the challenged remarks and that the claim was subject to review for plain error. Dkt. No. 17-3 at 2-3. The OCCA agreed with Bramlett that "'blatant appeals to sympathy' are inappropriate." *Id.* at 3. But the OCCA reasoned that a prosecutor's challenged remarks must be evaluated "within the context of the entire trial" and, further, that "[r]elief is only granted where the prosecutor's flagrant misconduct so infected the defendant's trial that it was rendered fundamentally unfair." *Id.* Applying these standards, the OCCA concluded that the prosecutors' challenged remarks "were not inappropriate appeals to sympathy but, rather, were proper comments on the evidence and the reasonable inferences drawn therefrom." *Id.* at 4.

Under clearly established federal law, "a prosecutor's improper comments will be held to violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (*per curiam*) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Because Supreme Court precedent sets a "highly generalized standard for evaluating claims of prosecutorial misconduct," *id.* at 49, state courts have "more leeway . . . in reaching outcomes in case-by-case determinations," *id.* at 48 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Bramlett does not explain how the OCCA's decision either is contrary to clearly established

federal law, based on an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts. Regardless, the Court has carefully considered each possibility and finds that Bramlett cannot make these showings. First, because it is clear from the OCCA's decision that it applied *Darden*'s general principles when it evaluated his claim, this Court cannot say that the OCCA's decision is "contrary to" clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362, 406 (2000) (explaining that "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)'s 'contrary to' clause"). Second, having reviewed the transcripts from the resentencing hearing, the Court cannot say that the OCCA either unreasonably applied *Darden* to the facts of this case or rested its decision on an unreasonable determination of the facts. *See Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (explaining that, to show an unreasonable application of clearly established federal law, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents, and that to show an unreasonable determination of the facts, "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" (first quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015), then quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015))). Those transcripts support the OCCA's determination that the prosecutor's challenged remarks were fair comments on the evidence and, that those comments, viewed in context of the entire proceeding, did not violate Bramlett's right to due process or his right to a fair resentencing hearing. As a result, § 2254(d) bars relief, and the Court denies the Petition as to claim one.

      **B.    Unconstitutional Statute**

Next, Bramlett claims Okla. Stat. tit. 22, § 701.10-1(A) violates the Fourteenth

9

Amendment's Due Process Clause because the law permits the State, in a noncapital case, to offer evidence in aggravation but does not provide a corresponding right to the defendant to offer evidence in mitigation. Dkt. No. 1 at 7, 72-76. The challenged statute provides:

> Upon conviction or adjudication of guilt of a defendant of murder in the first degree, wherein the state is not seeking the death penalty but has alleged that the defendant has prior felony convictions, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to life imprisonment without parole or life imprisonment, wherein the state shall be given the opportunity to prove any prior felony convictions beyond a reasonable doubt. The proceeding shall be conducted by the trial judge before the same trial jury as soon as practicable without presentence investigation.

Okla. Stat. tit. 22, § 701.10-1(A). As he did in state court, Bramlett primarily discusses the OCCA's prior decision in *Vanderpool v. State*, 434 P.3d 318 (Okla. Crim. App. 2018). In *Vanderpool*, the OCCA considered several constitutional challenges to this statute and found "no violation of the Eighth Amendment, the Equal Protection Clause, or the Due Process Clause when a trial court does not consider mitigating factors during a noncapital sentencing proceeding." Dkt. 1 at 72-73. Bramlett effectively asked the OCCA to revisit its decision in *Vanderpool*, asserting that the OCCA "wrongly concluded [in *Vanderpool*] that statutory restrictions against mitigation apply in a non-capital case even when the state is permitted to present aggravating evidence." Dkt. 1 at 75 (emphasis omitted). Bramlett also cites the Supreme Court's decision in *Lockett v. Ohio*, 438 U.S. 586 (1978), to support his second claim. In *Lockett*, the Supreme Court held that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604 (footnotes omitted). But Bramlett acknowledges that *Lockett* was a capital case and that the *Lockett* Court "did not address the issue before [the OCCA]: Whether a defendant has any right to present evidence in mitigation when a

10

statute permits a jury to hear evidence for the exclusive purpose of aggravation" in a noncapital case. Dkt. 1 at 73-74. Relying on *Vanderpool*, the OCCA rejected Bramlett's argument that the challenged statute violates a defendant's right to due process. Dkt. 17-3 at 6.

The Court agrees with Crow that § 2254(d) bars relief as to claim two.[6] As Bramlett's second claim alleges a legal error rather than a factual one,[7] he must satisfy one of the preconditions to habeas relief identified in § 2254(d)(1) before this Court may grant relief on his claim. *See House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) ("Subsection (d)(1) governs claims of legal error while subsection (d)(2) governs claims of factual error."). When § 2254(d)(1) guides this Court's review of a habeas claim, the first question for this Court is whether there are any "Supreme Court holdings in cases where the facts are at least closely-related or similar to the case [at issue]." *Id.* at 1016. If the answer to that question is no, this Court "need not assess whether a state court's decision was 'contrary to' or involved an 'unreasonable application' of [clearly established federal] law" because no such law exists. *Id.* at 1017.

As Crow argues, there is no clearly established federal law governing Bramlett's claim that a state law violates due process if it allows a state to present "aggravation" evidence, i.e., evidence of the defendant's prior felony convictions, for purposes of imposing a sentence in noncapital case,

---

[6] The Court rejects Crow's preliminary argument that Bramlett's second claim does not assert a cognizable habeas claim. As presented in state court and as reasserted here, Bramlett's second claim alleges the state sentencing law, as applied to him (or, possibly, on its face) violates his right to due process as guaranteed by the Fourteenth Amendment. That allegation is sufficient to state a cognizable habeas claim.

[7] Bramlett presented his second claim to the OCCA as "a legal issue," and that is how the OCCA addressed the claim. Dkt. 1 at 72; Dkt. 17-3 at 4-6. Bramlett appears to suggest, however, that the OCCA's decision as to this claim rests on a "wrong determination of the facts and a limited look at the evidence of mitigation that was 'clearly constrained' during the trial." Dkt. 21 at 2. Bramlett's argument is not entirely clear, but the Court finds no basis in the record for his apparent suggestion that the OCCA's decision as to the second claim rests on an unreasonable determination of the facts.

but does not also allow the defendant to present mitigation evidence. Rather, while the Supreme Court has held that the Constitution requires "that the sentencer in capital cases must be permitted to consider any relevant mitigating factor" before imposing a death sentence, *Eddings v. Oklahoma*, 455 U.S. 102, 112 (1982); *Lockett*, 438 U.S. at 604, the Supreme Court has not extended that principle to noncapital cases, *see Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) ("We have drawn the line of required individual sentencing at capital cases, and see no basis for extending it further."). Because there is no clearly established federal law governing Bramlett's second claim, § 2254(d)(1) bars relief. The Court thus denies the Petition as to claim two.

### C. Appellate Remedy

Last, Bramlett appears to claim either: (1) that the OCCA should have modified his sentence to life with the possibility of parole as a remedy for the prosecutorial misconduct it found on his direct appeal, rather than remanding the case for resentencing; or (2) that the OCCA should have modified his sentence to life with the possibility of parole as a remedy for "perceived deficiencies in the resentencing process as applied to the facts of his case." Dkt. No. 1 at 8, 76-83.

The OCCA understood this claim as arguing "that modification is the preferred remedy when sentencing error has occurred" because, in Bramlett's view, "the decision to remand a case for resentencing disadvantages a defendant." Dkt. No. 17-3 at 6-7. The OCCA rejected this claim, reasoning that Bramlett's "policy" arguments "would be best directed to the Legislature," and that his "arguments that he was disadvantaged by a resentencing trial are purely speculative" because Bramlett "does not allege any error of law in his resentencing trial and [the OCCA found] none." *Id.* at 7-8.

As to this third claim, the Court agrees with Crow that, however Bramlett's arguments are

construed, he does not state a cognizable habeas claim. Instead, his arguments merely express dissatisfaction with state laws regarding the appropriate appellate remedy for errors that impact the sentencing phase of a defendant's trial. These arguments, to the extent the Court understands them, do not implicate any of Bramlett's rights that are protected by federal law. *See Eizember*, 803 F.3d at 1145 ("[T]his court's role on collateral review isn't to second-guess state courts about the application of their own laws but to vindicate federal rights."). The Court therefore denies the Petition as to claim three.

### C.  Conclusion

Based on the foregoing analysis, the Court concludes Bramlett is not entitled to federal habeas relief and thus DENIES the Petition. Further, to the extent Bramlett requests a certificate of appealability, the Court DENIES that request because reasonable jurists would not debate the correctness of this Court's assessment of Bramlett's claims. 28 U.S.C. §2253(c); Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

THEREFORE, IT IS ORDERED that:

1. The Motion for Leave to Supplement Writ of Habeas Corpus [Dkt. No. 21] is DENIED.
2. The Motion to Stay [Dkt. No. 31] is DENIED as moot.
3. The Motion to Expedite Ruling [Dkt. No. 38] is DENIED as moot.
4. The Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Dkt. No. 1] is DENIED.
5. Bramlett's request for a certificate of appealability is DENIED.
6. A separate judgment shall be entered in this matter.

Dated this 24th day of August 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE